Filed 10/28/14  In re Co.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Co.R. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E061095 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1301075) |
| v. | OPINION |
| C.R. et al. | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant C.R. (father).

1

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant C.R. (mother).

Gregory P. Priamos, County Counsel, Anna M. Marchand, Deputy County Counsel, for Plaintiff and Respondent.

C.R. (father) and C.R. (mother) appeal an order terminating their parental rights to their three youngest children, the oldest of whom is now five years old. Their parental rights to their two older children were previously terminated, and the children were placed for adoption. Mother contends that the court erroneously denied her petition for modification of prior orders, pursuant to Welfare and Institutions Code section 388.[1] Both parents contend that the court erred in finding that the beneficial parent-child relationship exception to the preference for adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply.

Finding no error, we will affirm the termination order.

FACTUAL AND PROCEDURAL HISTORY

The parents have a lengthy history with the juvenile dependency system. In 2005, a section 300 petition was filed in Sacramento County as to their oldest child, C.R. Jr., alleging that father assaulted the child. The second amended petition alleged that on or about September 27, 2005, the child was examined at Sutter Memorial Hospital because

_____

[1] All statutory citations refer to the Welfare and Institutions Code.

2

he had suffered seizures. He was found to have multiple injuries, including bruising to his chest, back and abdomen, and a large, life-threatening subdural hematoma that was likely due to high-force trauma. The hematoma was probably inflicted a few weeks earlier. There was also evidence of a more recent head injury which was probably inflicted within a few days. C.R. Jr. suffered from multiple retinal hemorrhages on both sides, which indicated that he was violently shaken, once very recently and once a few weeks earlier. Father was observed striking him while they were at the hospital. The child was also malnourished. The subdural hematoma required surgery to place shunts in the child's head, and he was later determined to be "delayed," probably as the result of being violently shaken. In addition, although C.R. Jr. was born with hearing, he now had a hearing problem.[2] The injuries were all consistent with nonaccidental trauma and occurred while C.R. Jr. was in the care of his parents. The parents were not offered reunification services, and their parental rights were terminated on November 30, 2006. Father was convicted of felony child cruelty and was sentenced to four years probation with 60 days in county jail.

In July 2006, a second child, Ca., was detained shortly after her birth in Sacramento County because she was at risk of substantial harm, based on the abuse of C.R. Jr. The parents did not reunify with her, and she too was adopted.

---

[2] It appears that all members of this family are deaf or hearing-impaired and that all communicate using American Sign Language.

In May 2009, the parents' third child, Co.R., was also detained at birth in Sacramento County. The parents were offered reunification services and succeeded in reunifying with Co.R. Co.R. was later removed from the parents' custody in Placer County on allegations of general neglect. He was later returned to their custody. That case was closed after the family moved to Riverside County.

On September 24, 2013, the Riverside County Department of Public Social Services (DPSS) received a referral for physical abuse and general neglect after Co.R., then four years old, was observed with a purple bruise on each cheek. When he was asked how he got the bruises, Co.R. signed, "Father beat up all." He repeated that three times. Co.R. then signed that his brother took a scab off his knee, so father spanked him as well. Co.R. repeated, "Father beat up all." DPSS determined that father hit Co.R., leaving a bruise on each check. Co.R. also had bruising on one arm, on his inner and outer thigh, and had a "patterned" bruise on his lower back. In addition, Cl., who was then 20 months old, had a linear bruise on his buttocks and bruising to his outer arm. The parents' explanation as to how the children sustained the bruises was inconsistent with medical findings that the bruises were nonaccidental and consistent with physical abuse. Co.R. reported that mother had hit him as well, and said he was afraid of father.

On September 30, 2013, DPSS filed a petition pursuant to section 300 regarding Co.R., Cl., and their two-month-old brother, Ch. The petition alleged that Co.R. and Cl. had suffered serious physical harm, consisting of multiple bruises. The petition also alleged failure to protect by mother and that father "suffers from unresolved anger

4

management issues and despite prior services and the completion of a 52-week anger management course, father is easily frustrated by the children and continues to display volatile and aggressive behaviors." The petition alleged the family's history in Sacramento County and Placer County and father's conviction for willful harm to a child. It further alleged that Co.R. was at risk for serious emotional harm because mother had angrily confronted him about his disclosure as to father's abuse, resulting in Co.R.'s recanting and appearing scared and apprehensive. It also alleged that father abused marijuana and that he supervised the children while under the influence. Finally, it alleged that Ch. was at risk for serious injury based on the abuse of his siblings.

The children were detained and placed in two foster homes. Reunification services were to be provided to the parents. Supervised visitation was ordered for two hours a week.

The parents began visiting with Cl. and Ch. and the visits went well. Co.R., however, refused to attend the visits. When a social worker attempted to transport Co.R. from school to a supervised visit with his parents on October 9, 2013, he became distraught. He was crying and said he was afraid of his parents. He was afraid to be alone with them. The same thing occurred the following week.

At the jurisdiction/disposition hearing on November 21, 2013, the court removed the children from the parents' custody and denied reunification services pursuant to section 361.5, subdivision (b)(3), (10) and (11). The court set a selection and implementation hearing pursuant to section 366.26.

5

In December 2013, the children were placed in a prospective adoptive home with the couple who had adopted their older sister. By March 2014, DPSS reported that the children were all doing well in their placement and were positively bonded with the prospective adoptive parents and their children. The parents were visiting regularly, and visits were going well. The children "enjoye[d] a loving and nurturing connection" with their parents, a maternal uncle and other extended family members, as well as with their caregivers.[3]

The parents individually filed petitions to change a court order, pursuant to section 388, on March 18 and March 24, 2014, respectively. At the section 366.26 hearing, the court denied the petitions. It terminated parental rights as to all three children and selected adoption as their permanent plan. Both parents appealed.

## LEGAL ANALYSIS

### 1.

### THE JUVENILE COURT PROPERLY DENIED MOTHER'S

### SECTION 388 PETITION

Section 388 provides that a party may petition the court to change, modify or set aside a previous court order. A party who petitions under section 388 has the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances

---

**3** The record does not explain how Co.R. made the transition from being too frightened of his parents to attend supervised visits to enjoying visits.

or new evidence, and (2) the proposed change is in the child's best interest. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) The petition is addressed to the sound discretion of the juvenile court, and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion. (*Id.* at pp. 415-416.) Where two or more inferences can reasonably be drawn from the facts, the reviewing court may not substitute its judgment for that of the trial court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

Here, both parents filed section 388 petitions. Father raises no issues on appeal pertaining to the denial of his petition. Mother contends that she met her burden of proof and that the court therefore erred in denying her petition.

We begin by observing that in order to be effective, arguments must be tailored to the applicable standard of review. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) Failure to frame an argument using the correct standard of review can be deemed a concession of lack of merit. (*Ibid.*) As noted above, the standard of review of an order denying a section 388 petition is abuse of discretion. (*In re Jasmon O., supra,* 8 Cal.4th at pp. 415-416.) Mother's attorney disregards this basic tenet of appellate advocacy. Accordingly, we could simply conclude that the claim is without merit. We are not inclined to do so in juvenile dependency cases, given the nature of the interests which are at stake. However, because mother's argument is not framed in accordance with the correct standard of review, it is not helpful to us, and we will largely disregard it.

7

In her petition, mother asked the court either to return the children to her care with family maintenance services or to offer her reunification services. She asserted that since the order setting the section 366.26 hearing, she had completed programs in anger management and parenting, and had begun a program in alternatives to domestic violence. She had not previously been able to start the alternatives to domestic violence program for lack of a sign language interpreter. She attached documentation to support these assertions. She stated that she had visited regularly and consistently with the children and that the social worker recognized that she and the children have a significant bond, and a loving and nurturing connection.

At the hearing on the section 388 petition, mother testified that she had undertaken parenting, anger management, and alternatives to domestic violence programs, as well as therapy and counseling, on her own, since services were not offered to her by the court. She had by then almost completed the alternatives to domestic violence program. She discussed the things she had learned, including putting the children first, controlling her anger and dealing constructively with conflict. She testified that she and father had separated and were no longer living together, and that if she had to choose between him and her children, she would choose the children. She believed that the programs had helped her become a better mother. She described her visits with the children. However, she acknowledged that she had taken the same kinds of classes before, and testified that in spite of the finding that the bruises Co.R. and Cl. had suffered were the result of child

8

abuse, she did not believe that father inflicted them.  If she actually saw father hitting the children, however, she would call the police.

Mother's attorney argued that mother had demonstrated changed circumstance by virtue of the classes she had taken and the things that she had learned.  She had developed different ideas and different thought processes about how to deal with anger, how to deal with a family and with children, and how to discipline children.  He argued that the DPSS reports recognized the bond between mother and the children.

Opposing counsel, on the other hand, argued that mother had failed to show changed circumstances or sufficient insight into the issues that had resulted in the dependency because she was still denying that father hit Co.R. and Cl., despite having heard from Co.R. that father had hit them and despite having had services before.  The court agreed that mother had failed to show a change of circumstances for those reasons. It also found that granting the petition would not be in the children's best interest.

We see no abuse of discretion.  A court abuses its discretion if it makes a decision which is arbitrary, capricious or patently absurd.  (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.)  The court's ruling here was none of these.  The crux of the dependency as to mother was her failure to protect her children from abuse by father.  Despite his having inflicted extremely serious injury on their older child, and despite Co.R.'s report that father had "beat up all," resulting in multiple bruises to him and to his brother, mother still did not believe that father had injured the children.  She would believe it, she said, if she saw him doing it.  Given the seriousness of the injuries father was capable of

9

inflicting, it was in no way an abuse of discretion to reject mother's petition as not in the best interest of the children.[4]

2.

THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION IN REJECTING THE BENEFICIAL PARENT-CHILD RELATIONSHIP EXCEPTION

Both parents contend that the juvenile court should have found that the beneficial parental relationship exception to the statutory preference for adoption applied and that the order terminating their parental rights must be reversed. We disagree.

"Adoption must be selected as the permanent plan for an adoptable child and parental rights terminated unless the court finds 'a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. . . .' (§ 366.26, subd. (c)(1)(B).)" (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314 (*Bailey J.*).) Under these provisions, "the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child. The specified statutory circumstances . . . 'must be considered in view of the

---

[4] Because we have determined that the court did not err in denying mother's section 388 petition, we need not address her separate contention that the erroneous denial of the petition "infected" the subsequent section 366.26 hearing.

10

legislative preference for adoption when reunification efforts have failed.'" (*In re Celine R.* (2003) 31 Cal.4th 45, 53 (*Celine R.*).) "'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.'" (*Ibid.*)

The parent has the burden of establishing by a preponderance of the evidence that a statutory exception to adoption applies. (*Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) The parent must show both that a beneficial parental relationship exists and that severing that relationship would result in great harm to the child. (*Id.* at pp. 1314-1315.) A juvenile court's finding that the beneficial parental relationship exception does not apply is reviewed in part under the substantial evidence standard and in part for abuse of discretion: The factual finding, i.e., whether a beneficial parental relationship exists, is reviewed for substantial evidence, while the court's determination that the relationship does or does not constitute a "compelling reason" (*Celine R.*, *supra*, 31 Cal.4th at p. 53) for finding that termination of parental rights would be detrimental is reviewed for abuse of discretion. (*Bailey J.*, at pp. 1314-1315.)

The exception may apply if the child has a "substantial, positive emotional attachment" to the parent. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Here, it was undisputed that the children had a loving bond with both parents. It was also undisputed that the parents visited consistently throughout the dependency proceedings. However, the ultimate question we must decide is whether the juvenile court abused its discretion by failing to find that termination of parental rights would be so detrimental to

11

the children as to overcome the strong legislative preference for adoption.  That decision is entrusted to the sound discretion of the juvenile court.  (*Bailey J.*, *supra*, 189 Cal.App.4th at pp. 1314-1315.)

We cannot find an abuse of discretion unless the juvenile court exceeded the bounds of reason or acted arbitrarily or capriciously.  (*In re Stephanie M*., *supra*, 7 Cal.4th at pp. 318-319.)  """"When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.""""  (*Id*. at p. 319.)  Here, despite the continuing bond between the parents and the children, the court could rationally choose to place a greater value on the children's need for stability.  And, because the children were thriving in their prospective adoptive home, it was not an abuse of discretion to find that any benefit the children might derive from a continued relationship with the parents was outweighed by the benefits they would obtain through adoption.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

KING
J.

12